IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**NILDA RIVERA CRUZ**,
    Plaintiff,

v.

**HEWITT ASSOCIATES CARIBE, INC.**, *et al.*,
    Defendants.

Civil No. 15–1454 (PAD/BJM)

## **REPORT AND RECOMMENDATION**

Alleging harassment and retaliation, Nilda Rivera Cruz ("Rivera") brought this action against Hewitt Associates Caribe, Inc. ("Hewitt") and Aon Risk Solutions of Puerto Rico, Inc. ("ARS") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Puerto Rico Law 100 ("Law 100"), P.R. Laws Ann. tit. 29, § 146; Puerto Rico Law 80 ("Law 80"), P.R. Laws Ann. tit. 29, § 185; Puerto Rico Law 379 ("Law 379"), P.R. Laws Ann. tit. 29, § 271; Puerto Rico's Constitution, Art. II, §§ 1, 3, 8, 16; Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141; and Puerto Rico's breach of contract statutes. Docket No. 1 ("Compl.") at 1–2. ARS moved for summary judgment, Docket Nos. 108, 129, and Rivera opposed. Docket No. 116. Judge Delgado-Hernandez referred ARS's motion for summary judgment to me for report and recommendation. Docket No. 134.

For the reasons set forth below, ARS's motion for summary judgment should be **GRANTED**.[1]

### **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party."

---

[1] Hewitt's motion for summary judgment, Docket Nos. 107, 127, will be addressed in a separate report and recommendation.

*Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[2] submissions: the parties' joint statement of uncontested facts, Docket No. 98 ("APSUF"), Rivera's statement of uncontested facts, Docket No. 116–2 ("PSUF"), and Hewitt and ARS's statement of uncontested facts, Docket No. 99 ("DSUF").

Rivera worked for Hewitt as a Customer Service Representative from July 2013 through April 2014. PSUF ¶ 8; APSUF ¶ 32. Hewitt's official name is "Aon Hewitt." APSUF ¶ 9. Its name

---

[2] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the district court may "forgive" a violation of Local Rule 56, litigants ignore the rule, which is meant to prevent the court from ferreting through the evidentiary record, "at their peril." *See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

changed to Aon Hewitt after its parent company became a subsidiary of the Aon Corporation. The parent company of ARS is also a subsidiary of the Aon Corporation. APSUF ¶ 10.

As part of Rivera's hiring process, Irma Rosa completed and signed Rivera's I-9 form. PSUF ¶ 1. Rosa put ARS's address on the I-9 form as the "Employer's address." PSUF ¶ 4. After Hewitt supervisors Livia Ramos or Arisbel Castro decided to fire Rivera, Rosa conducted Rivera's Off Boarding Process to carry out her termination. PSUF ¶ 9, 23. The Off Boarding Process included having Rivera return keys and equipment, verifying Rivera's address, and discussing her benefits. Docket No. 116–4 at 5. After Rivera was terminated, Rosa signed a letter to the Administración para el Sustento de Menores regarding Rivera's employment, which was written on letterhead with the logo Aon Hewitt. Docket No. 116–4 at 6. Rosa was a Senior Human Resources Analyst and ARS employee who also provided resources support services to Hewitt under a shared services agreement between ARS and Hewitt.

When she was hired, Rivera received an email from HireRight Customer Service, sent to Rosa and Rivera, that said, "Congratulations on your new role at Aon." Docket No. 116–3 at 2. As part of becoming a new employee, Rivera signed a Temporary Employment Agreement that was printed on letterhead with the logo Aon Hewitt. Docket No. 101–1. She received a document titled "Policies and Guidelines at Aon Hewitt," which was printed on letterhead with the logo Aon Hewitt, and was issued an employee ID card that displayed her name and photo below the word "Aon." Docket No. 116–3 at 3–4.

## DISCUSSION

Rivera contends that Hewitt and ARS, as joint employers, share liability for her employment discrimination claims.[3] Docket No. 1. Hewitt and ARS argue that ARS cannot be held liable as a joint employer although it is undisputed that Hewitt was Rivera's employer. *See* Docket

---

[3] In her complaint, Rivera argued that ARS was her employer under a single employer theory and joint employer theory. Docket No. 1 at 5. However, in her response to ARS's motion for summary judgment based on both theories, she only argued that ARS was her employer based on joint employer theory. Docket No. 116 at 4–5. Therefore, she has waived the argument that ARS was her employer under a single employer theory, and the court will only consider whether ARS is her employer under the joint employer theory.

No. 107; 108; APSUF ¶ 15; 27; *Fortunato v. Capitol Sec. Police, Inc.*, No. 05-CV-1861 (GAG), 2007 WL 2688695, at *3 (D.P.R. Sept. 10, 2007) (assessing joint employer liability for claims under Title VII and related Puerto Rico state law claims); *Rodriguez v. Puerto Rico Marine Mgmt., Inc.*, 975 F. Supp. 115, 120 (D.P.R. 1997) (performing a joint employer relationship analysis for an ADEA claim).

"A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." *Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 163 (1st Cir. 1995) (quoting *Holyoke Visiting Nurses Ass'n v. NLRB,* 11 F.3d 302, 306 (1st Cir. 1993). In assessing whether a joint employer relationship exists, courts look to multiple factors including "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." *Id.*

In this case, Rivera has alleged several actions by ARS that purportedly raise a genuine dispute of material fact as to whether ARS was Rivera's employer. However, Rivera's evidence is insufficient to sustain an argument that a reasonable jury could find that ARS was Rivera's employer. Rivera first argues that ARS acted as her employer because Irma Rosa, a Senior Human Resources Analyst and ARS employee, completed and signed Rivera's I-9 form. Docket No. 116 at 7; PSUF ¶ 1. What Rivera fails to mention, though, is that it is undisputed that Rosa was also Hewitt's employee as Hewitt contracted her for its human resources work. *See* APSUF ¶ 26 ("Ms. Irma Rosa was a Senior Human Resources Analyst for [ARS], who provided resources support services for Hewitt under a shared services agreement between [ARS] and Hewitt."). Because Rivera has presented no facts suggesting that Rosa was working under the guidance of ARS as opposed to Hewitt per the shared services agreement, the fact that Rosa signed Rivera's I-9 form does not show that ARS was Rivera's employer. Relatedly, Rivera also points out that the address written on the I-9 form was ARS's address. PSUF ¶ 4. This, however, is still consistent with the

fact that Rosa, under the shared services agreement, was conducting Hewitt's human resources tasks while receiving mail at that address and does not show that ARS exerted significant control over Rivera's employment.

Rivera attempts one more time to draw a link between ARS's status as Rivera's employer and Rosa by explaining that Rosa met with Rivera to "carry out her [employment] termination," thus demonstrating ARS's control over her employment status. Docket No. 116 at 9. While the authority to fire an employee is a factor to consider in the joint employer analysis, Rivera has pointed to no case where a court has found that a human resources employee providing support tasks, such as filling out paperwork, after a supervisor has decided to terminate someone represents the human resources employee's authority to hire and fire. *See* Docket No. 116–4 at 5 ("Off Boarding Process" includes items such as returning keys and equipment, verifying the employee's address, and discussing the employee's benefits). As a member of Hewitt's human resources department, Rosa's participation in the human resources aspects of Rivera's termination does not support a finding that Rosa, in her capacity as an ARS employee, had any control over Rivera's hiring or firing. Instead, as Rivera in fact later argues, she was merely carrying out the directive of a Hewitt employee. *See* PSUF ¶ 23.

To prove that ARS was her employer, Rivera also proffered evidence in the form of two documents related to her employment that reference "Aon" as her express or implied employer as well as three documents related to her employment that have the logo "Aon Hewitt" in the letterhead. *See* Docket No. 116–3 at 2 (email from HireRight Customer Service, sent to Rosa and Rivera, states, "Congratulations on your new role at Aon"); Docket No. 116–3 at 3 (employee ID card says "Aon" along with Rivera's name and photo); Docket No. 116–3 at 4 ("Policies and Guidelines at Aon Hewitt" is printed on letterhead with the logo Aon Hewitt); Docket No. 101–1 (Rivera's "Temporary Employment Agreement" is printed on letterhead with the logo Aon Hewitt); Docket No. 116–4 at 6 (letter from Rosa to the Administración para el Sustento de Menores regarding Rivera's employment is written on letterhead with the logo Aon Hewitt). While Rivera argues that the use of the name "Aon" or "Aon Hewitt" shows that ARS was Rivera's

Rivera v. Hewitt Associates Caribe, Inc., et al., Civil No. 15–1454 (PAD/BJM)                6

employer, this argument again runs contrary to the undisputed facts: Hewitt's official name is "Aon Hewitt." APSUF ¶ 9 ("After its parent company became a subsidiary of Aon Corporation, [Hewitt] started using the trade name Aon Hewitt."). Therefore, the fact that the letterhead and employment documents state Hewitt's official name, Aon Hewitt, or just Aon, is not evidence that *Aon* Risk Solutions as opposed to *Aon* Hewitt was promulgating the rules governing Rivera's employment.

Notably, Rivera has presented no evidence that ARS or its employees supervised her day-to-day activities; hired, fired, or disciplined her; created work rules; gave her assignments; changed her compensation, benefits, or overtime; or chose the size of the workforce. As there are no material facts showing that ARS exerted significant control over Rivera or her employment status, Rivera has not met her burden of proof even when viewing the evidence in the light most favorable to her as the court must do. Therefore, it is appropriate to dismiss Rivera's federal claims against ARS.

Rivera also brought claims against ARS under Puerto Rico law, specifically Law 100, Law 379, Law 80, Article 1802, Puerto Rico's "breach of contract statutes," and sections of the Puerto Rico Constitution. Docket No. 1; Docket No. 108. However, as her employer, it was Hewitt that controlled Rivera's employment and eventual termination, which are the foundation of her retaliation and harassment claims under Law 100, Law 379, Law 80, Article 1802, and the breach of contract statutes. "Accordingly, liability for [Rivera's] allegedly unjustified and discriminatory termination falls upon [Hewitt]" because under Puerto Rico law, "'[w]ith regard to the legislation prohibiting job discrimination ..., as well as the legislation which regulates unjustified dismissal, whoever discriminates against or dismisses the employee . . . shall answer for their compliance.'" *Medina v. Adecco*, 561 F. Supp. 2d 162, 179 (D.P.R. 2008) (quoting P.R. Laws Ann. tit. 29, § 575b). The court should accordingly grant ARS summary judgment on Rivera's claims arising out of her employment with and termination by Hewitt under Law 100, Law 379, Law 80, Article 1802, and the breach of contract statutes

Rivera v. Hewitt Associates Caribe, Inc., et al., Civil No. 15–1454 (PAD/BJM)  7

## CONCLUSION

For the foregoing reasons, ARS's motion for summary judgment, Docket No. 108, should be **GRANTED** as to Rivera's claims under Title VII, the ADEA, Law 100, Law 379, Law 80, Article 1802, and those claims against ARS should be **DISMISSED**. I recommend that the court order the parties to address ARS's liability as to Rivera's claims under the Puerto Rico Constitution.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **by February 19, 2018**. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 5th day of February 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge