**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NILDA RIVERA-CRUZ,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 15-1454 (PAD)** |
| **HEWITT ASSOCIATES CARIBE, INC., et al.,** | |
| **Defendant.** | |

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Plaintiff worked as a Customer Service Representative for Hewitt for some eight months through successive temporary service contracts between July 2013 and April 2014, in a Call Center in Puerto Rico, answering calls from mostly stateside English-speaking Home Depot employees, some of whom, according to plaintiff, made openly derogatory comments about her accent while she tried to assist them with benefits-related concerns.[1]  The last of the contracts expired, the employment relationship terminated, and plaintiff initiated the present action complaining of hostile work environment, discrimination, retaliation, unjust discharge, and of other allegedly injurious behavior under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Puerto Rico Law 100,

---

[1] These comments included: "You have a really heavy accent that I can't stand;" "I cannot stand your accent;" "I really hate your accent, fuck yourself and transfer this call;" "You will have to excuse me but, with your accent all I think is booze;" "Your stupid accent makes me sick;" and, "Do you really speak and understand English? I don't think so, you sound stupid and unaware of my situation." Others, when told that Rivera was in Puerto Rico said, "You aliens are everywhere;" "Would your tiny Latin brain understand my problem?;" "You people are used to the food stamps and do not understand how working people pay their bills. You will never understand us. I want you to transfer this fucking phone call immediately to a USA based CSR, so I can explain and they will understand my situation;" "Your stupid laws and procedures in Puerto Rico do not apply to us in the USA; transfer this call immediately to a supervisor so I can tell them to try, within your limited capacity, to train you people from Puerto Rico better for this kind of situation;" and, "No wonder you cannot help me, you people don't have enough brain space to learn new tricks."  Rivera was also allegedly asked by Home Depot employees if she was "on drugs or drunk like all of you."

P.R. Laws Ann. tit. 29 § 146; Puerto Rico Law 80, P.R. Laws Ann. tit. 29 § 185; Puerto Rico Law 379, P.R. Laws Ann. tit. 29 § 271; the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141; and the Puerto Rico's Constitution, Art. II, §§ 1, 3, 8, 16.

Hewitt moved for summary judgment (Docket No. 107), which motion plaintiff opposed (Docket No. 117).  Hewitt replied (Docket No. 132) and plaintiff surreplied (Docket No. 132). The court referred the motions to U.S. Magistrate Judge Bruce J. McGiverin (Docket No. 134), who issued a Report and Recommendation ("R&R"), recommending that Hewitt's motion be granted in part and denied in part (Docket No. 137).  Plaintiff did not file any objections to the R&R, but Hewitt did so.  For the reasons explained below, the R & R is adopted in part.

## I.      REFERRAL

A district court may refer a pending motion to a magistrate judge for a report and recommendation.  See, 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Civ. Rule 72.  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.  Loc. Civ. Rule 72(d).  See 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Ramos-Echevarria v. Pichis, Inc., 698 F.Supp.2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005)(citing U.S. v. Raddatz, 447 U.S. 667, 673 (1980)).

## II.    REPORT AND RECOMMENDATION

The Magistrate Judge evaluated the voluminous material the parties submitted, making the following recommendations.

**1.    Hostile Work Environment (National Origin).**    The Magistrate Judge recommended that summary judgment be denied, finding there is a jury issue as to the comments concerning plaintiff's accent, and sufficient facts at this stage to support the conclusion that Hewitt knew or should have known about the comments and failed to take immediate and corrective action to deal with them (Docket No. 137 at pp. 7-19).

**2.    Discrimination (Age).**    The Magistrate Judge recommended that summary judgment be denied as to plaintiff's discriminatory termination claim, concluding there is evidence of pretext. Id. at pp. 22-30; 31-32.

**3.    Unjust Discharge (Law 80).**    The Magistrate Judge recommended that summary judgment be denied; pointing out that Hewitt only questioned the size of the amount to be awarded in the event plaintiff prevailed.    Id. at p. 32.

**4.    Retaliation.**    The Magistrate Judge recommended that summary judgment be granted, for lack of protected activity triggering statutory protection. Id. at pp. 19-22.

**5.    Hostile Work Environment (Age)**.    The Magistrate Judge recommended dismissal, for plaintiff failed to raise any arguments to defend her claims against summary judgment. Id. at p. 30.

**6.    Law 379/ Civil Code/ Puerto Rico Constitution**.    The Magistrate Judge recommended dismissal.    Id. at pp. 33-36.    Plaintiff failed to respond to the motion for summary judgment on these items.    With respect to the Constitution, the R& R concluded that plaintiff could not point to any material facts that support a finding that her zone of individual autonomy included

a purse without any details as to what, if anything, made it private in the circumstances of this case.  Id. at p. 36.

## III.    THE OBJECTIONS

### A.  Hostile Work Environment

Hewitt contends plaintiff did not show that she was subject to severe and pervasive national origin harassment, labeling the comments on plaintiff's accent and national origin as "not corroborated" by the co-workers that plaintiff identified as witnesses, and claims it cannot be liable because it provided the employees with effective tools to deal with the harassment when it happened (i.e. by giving Customer Service Representatives the ability to transfer the call, and identify/stop any harassers before the call took place)(Docket No. 139 at pp. 5-6, 8-10).  The most serious objection involves the extent to which Hewitt may be liable for the comments made by non-employees.[2]

Under Title VII and Law 100, harassment is actionable if it causes the plaintiff to subjectively perceive the work environment to be hostile or abusive, that environment is, on an objective basis, sufficiently severe or pervasive to alter the conditions of plaintiff's employment, and is inflicted because of the plaintiff's status as a member of a protected class.  See, Thompson v. Coca-Cola Co., 522 F.3d 168, 179 (1st Cir. 2008)(describing elements of national origin hostile work environment claim under Title VII); Godoy v. Maplehurst Bakeries, Inc., 747 F.Supp.2d 298, 317 (D.P.R. 2010)(hostile work environment claims brought under Title VII and Law 100 are essentially the same).  To properly assess the claim, courts look at the totality of circumstances, including the severity and frequency of the conduct; whether it was physically threatening or

---

[2] The argument that plaintiff's version has not been corroborated does not lead to summary judgment, but to a jury issue based on credibility.

humiliating or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. See, Thompson, 522 F.3d at 180 (discussing elements of claim). None of these factors is individually determinative of the inquiry. See, Ayala-Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 31 (1st Cir. 2012)(so holding).

If the comments were made as plaintiff has proffered, a reasonable juror may find them insulting, severe enough for a reasonable person in plaintiff's position to find them abusive, as she claims she did, to sufficiently alter the conditions of her employment. See, Fragante v. City and County of Honolulu, 888 F.2d 591, 596 (9th Cir. 1989)(accent and national origin are obviously inextricably intertwined). Hewitt argues that the comments: no more than reflect a person's preference to speak with someone located in the mainland United States; are even related to plaintiff's inability to perform her job duties by speaking English fluently to assist Home Depot's employees; and as such, do not amount to evidence of national origin discrimination (Docket No. 139 at pp. 5,7). The line between a merely unpleasant working environment and a hostile or abusive one is sometimes difficult to locate. See, Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996)(pointing out difficulty); Del Pilar Salgado v. Abbott Laboratories, 520 F.Supp.2d 279, 289 (D.P.R. 2007)(same)(quoting Baskerville v. Culligan Intern. Co., 50 F.3d 428, 430-431 (7th Cir. 1995)). To that end, however, the evidence must be construed in its totality, and so viewed, may sustain a finding consistent with plaintiff's version of the events.

Hewitt posits plaintiff had onetime telephone interaction with each customer, a situation differing from those where actionable harassment has been found in cases where the employee has had continuous interaction with the same customers regularly (Docket No. 139 at pp. 3-4). Hostile work environment claims typically involve repeated conduct, deriving from an ongoing series of harassing incidents. See, Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005)(so

recognizing).  The real impact of those incidents often depends on a constellation of surrounding circumstances which are not fully captured by a simple recitation of the words used.  See, Freeman v. Dal-Tile Corp., 750 F.3d 413, 421-424 (4th Cir. 2014)(examining nonemployee harassment).  However, there is not support for the proposition that they require a particular set of regular offenders.

Hewitt states that plaintiff never complained (Docket No. 139 at pp. 4, 8-9).  Nonetheless, an employer "typically draws upon two sources of information in order to determine the risk of prohibited harassment to an employee: information received directly from the employee, and the employer's knowledge of the specific context of is one working environment."  Erickson v. Wisconsin Dept. of Corrections, 469 F.3d 600, 606 (7th Cir. 2006), and there is evidence that Hewitt was or may have been aware of the problem because a supervisor (Livia Ramos) confirmed to plaintiff that she had experienced "situations like that" when plaintiff disclosed the harassing comments to her, and another supervisor (Arisabel Castro) sent an email to the Customer Service Representatives for Home Depot, including plaintiff, that she had "heard a few calls where Home Depot employees have [gone] into paranoid crazy mode" (Docket No. 137 at pp. 9-11, 16-17).  This evidence, showing that Hewitt believed that Home Depot employees were so acting, increases the likelihood that plaintiff also experienced such "crazy" behavior.

Hewitt posits that plaintiff and other Customer Service Representatives could have transferred the call in a situation where they were not comfortable with the caller (Docket No. 139 at p. 10).  Plaintiff, however, claims that she was instructed to calm down the caller if the call started to escalate, albeit in at least one occasion transferred an offending call to a U.S. Representative (Docket No. 101-2 at pp. 128-129, 140).  Still, it is unclear how instructing an

employee to try to calm down a caller uttering insulting language is an appropriate response to protect the employee from that language.

All in all, whether the comments were made, their content, character, frequency, Hewitt's knowledge of them, and plaintiff's reaction present triable issues about whether plaintiff was subjected to a hostile work environment. But trial issues on these aspects of the dispute do not end the matter, for plaintiff must also provide a basis for holding Hewitt liable for the type of harassment in question, so-called third-party harassment or harassment from an employer's client, customer, vendor or other third party directed at one or more of the employer's employees. See, Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)(observing need of basis for employer liability).

In this Circuit, employers may be liable for third-party harassment under certain circumstances, one of which being that they knew or should have known about the harassment and yet failed to take prompt steps to stop it. See, Medina-Rivera v. MVM, Inc., 713 F.3d 132, 137 (1st Cir. 2013)(addressing nonemployee harassing behavior).[3] Those steps must be undertaken at least to the extent that they are within the employer's power, Galdamez v. Potter, 415 F.3d 1015, 1025 (9th Cir. 2005)(so observing), taking into account the employer's "ability to persuade potential harassers to refrain from unlawful conduct." Little v. Windermere Relocation, Inc., 301 F.3d 958, 968 (9th Cir. 2018).

The rationale for holding employers liable for nonemployee harassment in those settings may warrant some elaboration in light of the reality that employers do not have the same agency

---

[3] The same standard applies to co-worker harassment, as nonemployee harassment is considered "more analogous [to that type of] … harassment than by supervisors. Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1074 (10th Cir. 1998).

relationship with nonemployees as they do with employees.  So following the Equal Employment Opportunity Commission's Guidelines, 29 C.F.R. § 1604(e), the employer's ability to address nonemployee harassment has been measured with a view to how much the employer controls the conditions of the work environment and could have expected to exert control over the nonemployee's conduct.[4]  See, Lockard, 162 F.3d at 1073-1074 (an employer who condones or tolerates the creation of a hostile work environment should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment); Lewis v. University of Connecticut, 2011 WL 5245423, *3,*4 (D.Conn. Nov. 2, 2011)(an employer should only be held liable where the employer exerts some control over the nonemployee conduct or where the employer may have some other legal responsibility over the nonemployee conduct).  But see, Dunn v. Washington County Hosp., 429 F.3d 689, 691 (7th Cir. 2005)(noting that ability to control the actor plays no role, for employers have an arsenal of incentives and sanctions that can be applied to effect conduct, and it is the use or failure to use these options that makes an employer responsible even with respect to independent contractors, who in this context are no different than employees).[5]

In those circumstances, the employer cannot avoid liability for third-party harassment by adopting a "see no evil, hear no evil" strategy.  Watson v. Blue Circle, Inc., 324 F.3d 325, 334

---

[4] The Guideline states in part that in reviewing non-employee harassment of employees in the workplace, the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such nonemployees.  Id. Even though it was issued in connection with sexual harassment, courts have recognized that the same general standards apply to both sex-based and other types of hostile work environment claims.  See, Lugo v. Shinseki, 2010 WL 1993065, * 9, n.10 (S.D. N.Y. May 19, 2010)(citing Torres v. Pisano, 116 F.3d 620, 624 (2d Cir. 1997))(so recognizing).

[5] To illustrate the point, the Seventh Circuit presented a hypothetical: a patient in a Hospital kept a macaw in his room, the bird bit and scratched women but not men, and the Hospital did nothing.  The Seventh Circuit observed that the Hospital would be responsible for the decision to expose women to the working conditions affected by the macaw, even though the bird was not an employee, and could not be controlled by reasoning or sanctions, for was the Hospital's responsibility to protect its female employees by excluding the offending bird from its premises.  Id. at 691.  Yet in the hypothetical, the Hospital controlled the location and could presumably take action to exclude the offender from the premises.

(11th Cir. 2003). Therefore, the employer would be liable for the prohibited harassment by ratifying or acquiescing to it. See, Rodríguez-Hernández v. Miranda-Vélez, 132 F.3d 848, 854 (1st Cir. 1998)(so noting in connection with Title VII, Law 100 and Puerto Rico's sexual harassment statute). Thus, *compare* Little v. Windermere Relocation, Inc., 301 F.3d 958, 968-969 (9th Cir. 2002)(construing facts in the light most favorable to plaintiff, jury could find that employer acquiesced or ratified nonemployee harassment by failing to take inmmediate corrective action), and Freeman, 750 F.3d at 424 (imposing liability for nonemployee harassment where employer failed to take any effective action to halt the harassment), *with* Folkerson v. Circus Circus Enterprises, Inc., 107 F.3d 754, 756 (9th Cir. 1997)(employer did not ratify or acquiesced to nonemployee harassment, taking reasonable steps to ensure employee's safety) and Whiting v. Labat-Anderson, Inc., 926 F.Supp.2d 106, 117 (D.D.C. 2013)(no liability for nonemployee harassment due to prompt corrective action).

These principles are fact-driven. See, Dallan F. Flake, "Employer Liability for Non-Employee Discrimination," 58 B.C.L.Rev. 1169, 1200 (2017)(noting fact-specific nature of court's analysis of nonemployee harassment); Francis J. Mootz III, "Insuring Employer Liability for Hostile Work Environment Claims: How Changes in Discrimination May Affect The Growing Market for Employment-Related Practices Liability Insurance," 21 W.New.Eng.L.Rev. 369, 376 (1999)(observing fact-driven standard developed to evaluate employer liability for hostile work environment). In drawing the line to assess potential liability, see, Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111-1112 (8th Cir. 1997)(holding that employer, a for-profit residential home for individuals with developmental disabilities, could be liable for the sexual assault committed by a resident since the employer "clearly controlled the environment in which [the resident] resided, and it had the ability to alter those conditions to a substantial degree") and Kudatzky v. Galbreath

Co., 1997 WL 598586, *5 (S.D. N.Y. Sept. 23, 1997)(employer could be liable for client's harassing conduct since much like a casino owner or the employer of an independent contractor, employer could have deterred his client) in contrast to Viruet v. Citizen Advice Bureau, 2002 WL 1880731, * 17 (S.D. N.Y. Aug. 15, 2002)(finding that employer could not be liable for conduct of non-employee client as employer had little or no control over client's language), and Lewis, 2011 WL 5245423 at *5 (dismissing complaint under Fed. R. Civ. P. 12(b)(6) in part because plaintiff failed to plead any facts regarding the nature of the relationship between his employer and the entity to which employer provided services and whose employees harassed him which would suggest that employer had the authority or ability to take appropriate action with respect to the harassment).

Viewing the record in light most favorable to plaintiff, Hewitt has not provided sufficient evidence to evaluate how these variables interacted here to justify the result it has requested, as the record is silent on the nature of the contractual relationship it had with Home Depot, and the authority or ability within that relationship to take appropriate action. In consequence, the motion for summary judgment must be denied as to the hostile work environment claims. See, Rivera-Ruiz v. González-Rivera, 983 F.2d 332, 334-335 (1st Cir. 1993)(denying motion for summary judgment in employment discrimination case where record was unclear); Maine v. Kerramerican. Inc., 480 F.Supp.2d 357, 359 n.3, 364-365 (D. Maine 2007)(same). The denial applies to both Title VII and Law 100. See, Godoy, 747 F.Supp.2d at 298 (denying dismissal request with respect to Title VII and Law 100 hostile work environment claims).

## B. Age Discrimination

Plaintiff complains of age discrimination under the ADEA and Law 100. He lacks direct evidence to support the claim. So applying the *prima facie* burden shifting framework, the

Magistrate Judge found that plaintiff made out a *prima facie* case and that Hewitt rebutted it with evidence of performance problems (Docket No. 137 at p. 28). Yet he concluded that plaintiff had put forward sufficient evidence for a jury to find that those problems were relied on as a pretext to discriminate against her because of her age (id. at pp. 28-30), a conclusion with which Hewitt disagrees (Docket No. 139).

### 1. ADEA

Under the ADEA, an employer may "not discharge ... or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] age." 29 U.S.C. § 623(a)(1). A plaintiff asserting a claim under the ADEA has the burden of establishing "that age was the 'but-for' cause of the employer's adverse action." See, Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012)(quoting Gross v. FBL Financial Services, Inc., 557 U.S. 167, 177 (2009)). Differently stated, the plaintiff's age must have been the determinative factor as opposed to merely a motivating factor in the employer's decision. Gross, 557 U.S. at 168.

Where, as here, plaintiff does not have direct evidence of discrimination, courts evaluate this claim under the burden-shifting framework drawn from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Consistent with this framework, plaintiff must establish that she (1) was at least 40 years old at the time of the adverse action; (2) met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) the employer filed the position, thereby showing a continuing need for the services that she had been rendering. Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014).

If the plaintiff succeeds in establishing a *prima facie* case, the presumption arises that the employer unlawfully discriminated against plaintiff, shifting to the employer the burden of

articulating a legitimate, nondiscriminatory reason for the adverse employment action. Benoit v.

Technical Mfg. Corp., 331 F.3d 166, 174 (1st Cir. 2003); Champagne v. Servistar Corp., 138 F.3d

7, 12 (1st Cir. 1998). If the defendant is successful in satisfying its burden, plaintiff no longer can

rest on the initial inference of discrimination. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st

Cir. 2007). The inference raised by the *prima facie* case dissolves, and the last transfer of burdens

occurs. Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991), cert. denied 504 U.S.

985 (1992). In that case, the burden shifts back to the plaintiff to show that the reason proffered

was a pretext concealing unlawful discrimination of the type alleged. Rodríguez-Cuervos v. Wal-

Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999). At this stage, the plaintiff's burden of producing

evidence to rebut the employer's stated reason for its employment action merges with the ultimate

burden of persuading the court that she has been the victim of intentional discrimination. Feliciano

de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 6 (1st Cir. 2000); Vélez v.

Thermo King de Puerto Rico, Inc., 585 F.3d 441, 447 (1st Cir. 2009).

The court assumes that plaintiff established a *prima facie* case of discrimination, which

Hewitt rebutted, articulating and producing a lawful reason for its decision: plaintiff's performance

problems, a sub-par performance that never improved despite continuing evaluations and coaching

packages. See, García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008)(employer met

its burden of providing a legitimate non-discriminatory reason by stating that employee was

discharged due to her deficient performance). As a result, to defeat summary judgment plaintiff

must show that the employer's given reason was pretextual and that the record would permit a

reasonable jury to infer that the real reason was discriminatory animus based on plaintiff's age.

See, Meléndez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010)(articulating and applying

test).  On this aspect, the court reaches a different conclusion than the one subscribed to in the R&R.

Pretext "means something worse than a business error." Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria-Puerto Rico, 404 F.3d 42, 45 (1st Cir.2005).  It means deceit – a lie – a made-up story to cover one's tracks.  See, Collazo-Rosado v. University of Puerto Rico, 765 F.3d 86, 92 (1st Cir.2014)(so observing).  To that end, pretext analysis is more demanding than the assessment of whether a *prima facie* case has been established, Mariani-Colón v. Department of Homeland Sec. ex. rel. Chertoff, 511 F.3d 216, 222 (1st Cir. 2007) (so noting), moving the inquiry to a new level of specificity.  Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003)(applying formulation).  It directs the court's focus to the perception of the employer, to determine whether the decisionmaker believed the stated reason is real.  See, Ronda-Pérez, 404 F.3d at 45 (discussing topic).  This can be demonstrated in a variety of ways, such as showing that the employer proffered different and arguably inconsistent explanations for its decision, unless the record reveals that the real motive was an unstated nondiscriminatory reason, Collazo-Rosado, 765 F.3d at 93; comparative evidence that plaintiff was treated less favorably than similarly situated employees; Kosereis, 331 F.3d at 213; and sufficiently probative discriminatory comments, González, 304 F.3d at 69-72.

From the documents filed, plaintiff did not seem to be meeting Hewitt's 85% quality score, scoring 81%, 75%, 76.5%, 82.5%, and 75%, with one 85.2% (Docket No. 105, Exh. 18 - bates stamped 131).  She was counseled that she did not probe to identify the purpose of a call; enrolled a customer without clarifying deductions were per pay period rather than per month; and spoke about credits but seemed she said $45 instead of $35, (Exh. 19A - bates stamped 134).  She mentioned the timing to receive ID cards, but not the timing for carriers to update nor COE

(although the meaning of COE is unclear). <u>Id.</u> Similarly, she did not confirm contact information, (<u>id.</u>); failed to validate the customer's concern (Exh. 19B - bates stamped 137); and did not use verbal cues directly (<u>id.</u>).

Additionally, plaintiff did not conduct proper research nor exhausted her sources before transferring the customer over to the plan carrier (<u>id.</u> - bates stamped 38); did not offer insurance at the beginning of the call; and failed to address the customer's issues properly, instead of making sure to convey an understanding of the customer's request, assuming ownership of the matter by setting the proper expectations, and taking a brief pause to ask the customer if he had any question so far (Exh. 19C - bates stamped 145). Further, she provided incorrect information, telling a customer that once payment for April was posted no deductions would be applied to his paycheck after the return to work date (<u>id.</u>); did not validate the customer's concern (Exh. 19F - bates stamped 157); provided information that was neither tailored nor delivered in a manner that was easy for the customer to understand, and did not convey a proper understanding of the customer's matter (Exh. 19F - bates stamped 158). She did not structure information logically (<u>id.</u> bates stamped 159); did not verify contact information (Exh. 19G - bates stamped 72); and failed to advise the customer of carrier updates. <u>Id.</u> In other occasions, she did not personalize closing (Exh. 19J - bates stamped 79); and transferred to YSA (although its meaning is unclear), even though the Call Center only transferred calls to YSA if the customer was requesting TR status (<u>id.</u> bates stamped 80). Moreover, she did not advise customer that if she cancelled benefit, she would not be able to make changes within a 12-month rolling period (Exh. 19K - bates stamped 87); and did not complete the walk-through process correctly (Exh. 19M - bates stamped 94).

Plaintiff argues that performance issues were a pretext to terminate her because the first of her employment contracts ran from July 2014 through January 29, 2014; she was given a second

contract with an increase in compensation from $8.00 per hour to $10.50 per hour, from January 29, 2014 to March 31, 2014; and a third contract, from April 1, 2014 until April 30, 2014 (though with no increase in compensation rate), which was not renewed (Docket No. 117 at p. 21). She states that until March 25, 2014 she never received a "coaching package," "evaluation," or "personalized care guide," a proposition with which Hewitt takes issue, further pointing out that on April 1, 2014, Team Leader Livia Ramos informed plaintiff that she would be placed on a personal improvement plan (Docket No. 99 at ¶ Y), albeit plaintiff alleges the plan was never put in place (Docket No. 116-1 while denying ¶ Y); see also Docket No. 137 at p. 6. Hewitt, however, asserts that Trainer Angel Rivera conducted three coaching sessions with plaintiff in April 2014, and that plaintiff's performance did not improve (Docket No. 99 at ¶ CC and Docket No. 137 at p. 6). Two days prior to the termination, however, one supervisor told a large group of employees in a meeting that he wanted "young, new blood," "young dynamic individuals" (Docket No. 137 at p. 30)(citing PSUF ¶ 25). Viewing the record in plaintiff's favor, she cannot show that the reasons advanced by Hewitt for her termination were a pretext to conceal age animus, or even more, that age was the "but for" reason behind plaintiff's termination.

First, evidence of overall positive employment reviews may be used to establish pretext when an employee is later terminated for poor performance. See, García-García v. Costco Wholesale Corporation, 878 F.3d 411, 421 (1st Cir. 2017)(so acknowledging)(citing Acevedo-Parrilla, 696 F.3d at 140-143, where plaintiff terminated for failing to comply with the duties and objectives of the position even though evidence showed that he had successfully complied with performance improvement plan, was rated as "fully met expectations," and received a bonus of $13,166.00 for his performance, all seemingly incongruous facts that might lead a reasonable juror to disbelieve that decision to terminate plaintiff was based purely on poor performance record).

However, that was not the situation here.[6]  If contract renewals on January 29, 2014 and March 31, 2014 means that plaintiff's performance was satisfactory then, in the present context the past performance do not call into question subsequent criticism.  See, Leffel v. Valley Financial Services, 113 F.3d 787, 795 (7th Cir. 1997)(so recognizing).  Thus, the prior assessments do not render the most recent negative appraisal of the employee's performance inherently untrustworthy.  See, Kerns v. Capita Graphics, Inc., 178 F.3d 1011, 1018 (8th Cir. 1999)(articulating and applying principle).

Second, plaintiff has not disputed the performance problems, of which she was aware.  See, La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1414-1415 (7th Cir. 1984)(dismissing age discrimination claim in part because plaintiff failed to show that defendant's reasons for termination lacked a basis in fact); Kerns, 178 F.3d at 1018 (plaintiff did not dispute that she made errors at various points or that her actions produced undesirable consequences for the company).  And there is no evidence that other, similarly situated employees were treated more favorably than plaintiff was.  See, García-García, 878 F.3d at 424-425 (dismissing discrimination claim in part because plaintiff failed to show that other similarly situated employees were treated differently).  Compare with Acevedo-Parrilla, 696 F.3d at 144-145 (pretextual nature of proffered explanation found where similarly situated younger employee was not reprimanded or disciplined for incidents similar to the problems that led to plaintiff's termination).[7]

---

[6] Compare with García-García, 878 Fed. 3d at 421 (referring to plaintiff's history of frequent promotions, high ratings on quality inspections and high monthly average sales, albeit in circumstances of the case, that history was insufficient to show pretext).

[7] See also, Benoit, 331 F.3d at 174 (rejecting discrimination claims of plaintiff unable to show that other similarly situated employees outside of the protected group were treated differently); Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d at 40, 47-48 (summary judgment dismissing discrimination claim of plaintiff whose employment terminated but could not show that employer treated him differently than it treated other employees).

Third, the "young blood, new blood" comment is not probative of age animus. While evidence of age related comments may be sufficient to support an inference of pretext, the lack of a direct connection between the words and the employment action significantly weakens their probative value. See, Meléndez, 622 F.3d at 54 (so observing). The record reflects no such connection. See, Gagne v. Northwestern Nat. Ins. Co., 881 F.2d 309, 314 (6th Cir. 1989) (plaintiff's immediate supervisor's comment that he "needed younger blood" held insufficient to show pretext supporting a finding of age discrimination, as it was isolated, was made at a meeting attended by a number of employees, was not directed at plaintiff, and did not negate plaintiff's substandard performance); Suárez v. Pueblo Intern., Inc., 229 F.3d 49, 56 (1st Cir. 2000)(comment that company needed "new blood," that plaintiff's proposals were "tired," and that another employee "looked old" found too innocuous to transform managerial decisions into something more invidious): Meléndez, 622 F.3d at 55 (even if ageist, remarks were insufficient to overcome the evidence that employer proffered to show plaintiff was dismissed due to poor work performance and thus failed to raise the inference that the real reason for the termination was plaintiff's age). At the end of the day, the record does not add up to the slightest suggestion of an effort to deceive or cover up a hidden motive, and fails to indicate that there is a viable issue of age-related discrimination to justify a trial under the ADEA. See, Ronda-Pérez, 404 F.3d at 48 (dismissing age discrimination claim under similar circumstances).

### 2. Law 100

Like the ADEA, Law 100 provides a cause of action in favor of persons who suffer discrimination in their employment because of their age. See, P.R. Laws Ann. tit. 29 § 146 (prohibiting discrimination in protected categories including age, and laying out remedies for violation). In the absence of direct evidence of discrimination, a plaintiff may rely on

circumstantial evidence through the "just cause" framework set in Article 3 of the statute.[8] At its

core, the framework consists of three stages: (1) a *prima facie* case; (2) burden shifting; and (3)

ultimate demonstration of discrimination. See, Caraballo-Cecilio v. Marina PDR Tallyman LLC,

2016 WL 6068117, *2 (D.P.R. Oct. 13, 2016)(describing framework).

A plaintiff establishes a *prima facie* case by demonstrating that: (1) she suffered an adverse

employment action; (2) the adverse action lacked just cause; and (3) there exists some basic fact

substantiating the type of discrimination alleged. See, Rodríguez v. Executive Airlines, Inc., 180

F.Supp.3d 129, 132-133 (D.P.R. 2016)(setting forth elements of *prima facie* case under Law 100);

Varela Teron v. Banco Santander de Puerto Rico, 257 F.Supp.2d 454, 466 (D.P.R.2003)(same).[9]

A *prima facie* showing activates that the plaintiff has been the victim of discrimination. See,

Ramos v. Davis & Geck, Inc., 167 F.3d 727 (1st Cir. 1999)(pointing out effect of presumption);

García-García, 878 F.3d at 423 (same).

The employer may rebut the presumption proving legitimate, non-discriminatory grounds

for the challenged action. See, De Arteaga v. Pall Ultrafine Filtration Corp., 862 F.2d 940, 941

(1st Cir. 1988)(once activated, the presumption requires employer to prove that the action in

question was not discriminatory); Ramos-Santiago v. WHM Carib, LLC, 2017 WL 1025784, *6

(D.P.R. March 14, 2017)(citing López Fantauzzi v. 100% Natural, 181 D.P.R. 92, 123

(2011)(explaining, among other things, how employer may rebut the presumption). The burden is

---

[8] Article 3 provides that the acts mentioned in Articles 1 and 2 (*i.e.* discharge, layoff, and failure to hire), shall be presumed to have been committed in violation of Law No. 100 "whenever the same shall have been performed without just cause." P.R. Laws Ann. tit. 29 §§ 146, 148. The presumption is of a "controvertible character." Id. at Section 148.

[9] See also, Rodríguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 62 (1st Cir. 2005)(validating jury instruction to the effect that, for burden of proof in a Law No. 100 claim to shift to employer, plaintiff must prove that: she was in a protected class, was fired, and the termination was unjustified); Menzel v. Western Auto Supply Co., 848 F.2d 327, 331 (1st Cir. 1988)(pointing out that "[i]f plaintiff fails to show that there was no just cause, the presumption of discrimination is not activated").

one of production and persuasion.  See, García-García, 878 F.3d at 423 (so noting).  Should the employer carry this burden, the presumption of discrimination disappears, shifting the burden of persuasion back to the employee to show, without the benefit of the presumption, that the action was motivated by prohibited discrimination (in other words, that the reasons proffered were pretextual).  Id.

As it did under the ADEA, the court assumes that plaintiff made out a *prima facie* case of discrimination under Law 100.  Hewitt articulated – and produced – evidence of legitimate nondiscriminatory reasons for its decision.  Since the Law 100 plaintiff is in the same situation as an ADEA plaintiff after the defendant has articulated a legitimate, nondiscriminatory reason for its actions," Álvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998), and plaintiff failed to show a genuine issue of material fact exists as to pretext under the ADEA, she cannot prove it as to Law 100 either.  The absence of actionable pretext results in dismissal as a matter of law of both the ADEA and Law 100 claims.  See, Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007)(summary judgment dismissing ADEA and Law No. 100 claims for lack of evidence to infer that employer's justification was a pretext for impermissible age discrimination); Morales-Guadalupe v. Oriental Bank and Trust, 2018 WL 1116544, *8 (D.P.R. February 26, 2018)(same).

## C. **Law 80**

Law 80 requires the employer to pay a statutory indemnity to employees hired for undefined term who are dismissed without just cause.  See, Article 1 of Law 80, P.R. Laws Ann. tit. 29 § 185a (stating payment requirement); García-García, 878 F.3d at 419-420 (describing statute).  In its objections to the R& R, Hewitt states that the undisputed evidence demonstrates that plaintiff's termination was based on her poor job performance, which constitutes "just cause"

under Law 80 and for the same reason, that plaintiff's action under that statute should be dismissed (Docket No. 139 at p. 13).

Hewitt's sole argument in the motion for summary judgment regarding the Law 80 claim was that "assuming arguendo that plaintiff can establish that she was unjustly terminated in violation of [Law 80], her recovery would be limited" (Docket No. 137 at p. 32). And the law is clear that when a dispositive motion is heard before a magistrate judge, the movant must make all her arguments then and there, and cannot later add new arguments at subsequent stages of the proceeding as objection to the magistrate judge's proposed findings and conclusions. <u>See</u>, <u>Cherox Inc</u>. v. <u>Tip Top Construction Corp.</u>, 175 F.Supp.3d 1, 3 (D.P.R. 2016)(refusing to review, as unpreserved, argument not seasonably presented to the magistrate judge). Given that Hewitt did raise the just cause issue in its answer (Docket No. 17 at ¶¶ 17, 20), this ruling does not preclude it from adequately raising the argument at a later stage consistently with the Case Management Order.

### D. Remaining Claims

The remaining claims involve retaliation, Law 379, the Civil Code, the Puerto Rico Constitution, and Law 80. The court agrees with, and adopts the Magistrate Judge's analysis, conclusions and recommendations on these claims.[10]

---

[10] Plaintiff failed to respond to the motion for summary judgment on these items. The motion persuasively argues that dismissal is appropriate as a matter of law as to them. Likewise, the court agrees with Magistrate Judge's reasoning respecting the constitutional claim, and why it should be dismissed.

**IV. CONCLUSION**

Having made an independent, *de novo*, examination of the entire record, the Magistrate Judge's findings and conclusions are hereby ADOPTED in part and REJECTED in part as follows:

1. The request for summary judgment on plaintiff's hostile work environment claim based on national origin is DENIED under Title VII and Law 100;

2. The request for summary judgment with respect to plaintiff's discrimination claim under ADEA and Law 100 is GRANTED;

3. The request for summary judgment on plaintiff's hostile work environment claim based on age is GRANTED.

4. The request for summary judgment as to plaintiff's retaliation claim is GRANTED;

5. The request for summary judgment regarding plaintiff's claims under Law 379, the Civil Code and the Puerto Rico Constitution is GRANTED; and

6. The request for summary judgment on plaintiff's Law 80 claim is DENIED.

In view of the foregoing, only the national-origin based hostile work environment and Law 80 claims remain. An Order for the parties to submit a Joint Proposed Pretrial Conference Report will follow.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge